UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG LEE STAMPER, | No. 2:12-cv-0192 AC |
| Plaintiff, | |
| v. | ORDER |
| MICHAEL ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the Commissioner's decision is reversed and this case is remanded for further proceedings.

PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on May 23, 2007, alleging disability beginning February 15, 2007. Administrative Record ("AR") 12. Plaintiff's application was initially denied on November 30, 2007, and upon reconsideration on July 14, 2008. Id. On November 5, 2009, a hearing was held before administrative law judge ("ALJ") L. Kalei Fong. AR 17. Plaintiff was represented by an attorney at the hearing. AR 12. In a decision dated March 5, 2010, the ALJ

determined that plaintiff was not disabled under 1614(a)(3)(A) of the Act.[1]  AR 12-17.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since May 23, 2007, the application date.
>
> 2. The claimant has had the following severe impairments: degenerative disc disease; left shoulder impingement; and degenerative changes of fingers in the left hand.
>
> 3. The claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 4. After careful consideration of the entire record, the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

>undersigned finds that the claimant has had a residual functional capacity as follows: able to lift 10 pounds frequently and 20 pounds occasionally; able to stand and/or walk six hours in an eight-hour workday; able to sit six hours in an eight-hour workday; unlimited in pushing and pulling; able to stoop and crouch occasionally; able to climb ladders, ropes, and scaffolds occasionally; otherwise, able to perform frequent climbing, kneeling, balancing, and crawling; and with the left upper extremity, able to perform no more than frequent overhead reaching and/or feeling activities.
>
>5.  The claimant has been capable of performing his past relevant work as an office machine service supervisor and warehouse supervisor. This work does not require the performance of work related activities precluded by the claimant's residual functional capacity.
>
>6.  The claimant has not been under a disability, as defined in the Social Security Act, since May 23, 2007, the date the application was filed.

AR 14-16.

Plaintiff requested a review of the ALJ's decision by the Appeals Council. AR 1-5. On December 9, 2011, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. See id.

## STATEMENT OF THE FACTS

Born on August 17, 1954, plaintiff was 52 years old on the alleged onset date of disability and 55 years old at the time of the hearing. AR 33. Plaintiff completed two years of junior college. AR 34. He worked previously as a laborer for a temp agency, a maintenance worker at an apartment complex, a warehouse material handler, a banking program manager, and a temp worker for a temp agency. AR 152. Plaintiff alleges disability beginning on February 15, 2007, when a workplace accident resulted in "back and neck injury" which limited his ability to work ("I am not able to do anything. Unable to walk, stoop, lift things."). AR 151.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

1  Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,
2  180 F.3d 1094, 1097 (9th Cir. 1999).

3  The findings of the Commissioner as to any fact, if supported by substantial evidence, are
4  conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is
5  more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th
6  Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a
7  conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.
8  N.L.R.B., 305 U.S. 197, 229 (1938)).

9  "The ALJ is responsible for determining credibility, resolving conflicts in medical
10 testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)
11 (citations omitted). "Where the evidence is susceptible to more than one rational interpretation,
12 one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.
13 Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

14                                              ANALYSIS

15 In his moving papers, plaintiff argues that the ALJ erred by (1) failing to apply the correct
16 legal standard in making his step two finding regarding plaintiff's mental impairment, (2) failing
17 to set forth specific and legitimate reasons for disregarding opinions of plaintiff's treating
18 physicians, (3) failing to set forth clear and convincing reasons to discredit plaintiff's subjective
19 complaints and limitations, (4) finding that substantial evidence existed to support findings that
20 plaintiff has the residual functional capacity ("RFC") to perform his past relevant work, and (5)
21 finding the testimony of a vocational expert ("VE") to constitute substantial evidence that
22 plaintiff had the RFC to perform his past relevant work.

23 A.     The ALJ's Step Two Analysis Regarding Mental Impairment

24 Plaintiff argues first that the ALJ erred in finding that plaintiff's anxiety did not constitute
25 a significant limiting mental impairment.

26 "The step-two inquiry is a de minimis screening device to dispose of groundless claims."
27 Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants
28 whose medical impairment is so slight that it is unlikely they would be disabled even if age,

4

1  education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 153 (1987).

2  At step two of the sequential evaluation, the ALJ determines which of claimant's alleged

3  impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not

4  severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no

5  more than a minimal effect on the ability to do basic work activities.'" Webb v. Barnhart, 433

6  F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96–3p (1996)). The step

7  two severity determination is "merely a threshold determination of whether the claimant is able to

8  perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima

9  facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

10      At the second step plaintiff has the burden of providing medical evidence of signs,

11  symptoms, and laboratory findings that show that his or her impairments are severe and are

12  expected to last for a continuous period of twelve months. Ukolov v. Barnhart, 420 F.3d 1002,

13  1004-05 (9th Cir. 2005); see also 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909,

14  416.920(a)(4)(ii). An ALJ's finding that a claimant is not disabled at step two will be upheld

15  where "there are no medical signs or laboratory findings to substantiate the existence of medically

16  determinable physical or mental impairment." Ukolov, 420 F.3d at 1005.

17      In support of his position that his anxiety constitutes a severe mental health impairment,

18  plaintiff cites to two progress notes issued on the same day, August 16, 2007, by different

19  doctors. See AR 471-72. In the first progress note, which was prepared by Dr. Jack Downhill

20  following a mental status examination, plaintiff was described as "nervous" and assessed a

21  "generalized anxiety disorder" that was "eacerbated [sic] by pain and some memory of trauma."

22  AR 471. Plaintiff was prescribed Seroquel for sleeplessness and Citalopram for depression. Id.

23  In the second progress note, prepared by Dr. Steven Shotz, plaintiff was examined for a

24  "biopsychosocial evaluation" in which he complained of stress, insomnia, increased irritability,

25  and worrying constantly, but "[d]enie[d] feelings of depression." AR 472. Dr. Shotz's

26  impression of plaintiff was that he was "[e]ssentially [a] well functioning man suffering recent

27  injury and subsequent financial and occupational stressors, evidenced by anxiety and insomnia."

28  AR 475. Dr. Shotz diagnosed plaintiff with an adjustment disorder with anxious mood (insomnia

secondary to anxiety). Id.

Plaintiff also cites to numerous portions of the record in support of his claim that he was treated on a regular basis for anxiety. Many of the portions of the record that plaintiff cites, however, merely duplicate an identical list of plaintiff's past medical history, including Dr. Shotz's August 16, 2007 diagnosis of "adjustment disorder with anxiety" and a June 29, 2007 anxiety diagnosis by a Noreen Goodin. See AR 459, 465, 468, 478, 483, and 566-67. But plaintiff does also cite to portions of the record that reference his anxiety and the medication that he was prescribed for it. See, e.g., AR 533 (partially legible progress note following a June 26, 2007 medical consultation, in which plaintiff's anxiety was referenced); AR 578 (progress note following a March 13, 2008 follow-up examination, in which plaintiff was directed to continue the Citalopram); AR 615-17 (progress note following a January 13, 2009 internal medicine consultation, in which plaintiff's anxiety and insomnia were noted); AR 586 (progress note following an August 12, 2009 "pain medicine" meeting, in which plaintiff's anxiety was discussed as follows: "Anxiety / PTSD; denies depression, no thoughts of harm or others, some issues of anxiety. . . . Having problems with memory of whether or not he took meds; wife controlling distribution.").

Finally, plaintiff refers to a disability evaluation prepared by Dr. Tariq Ahmad, who noted plaintiff's history of anxiety, as well as arthritis with disc disease, hypertension, lymphoma, and insomnia. AR 182. On a scale of 1-10, Dr. Ahmad determined that plaintiff's impairments (considered collectively) affected his activities of daily living as follows: general activity – 5; mood – 6; walking ability – 6; work including household chores – 5; relation with other people – 5; sleeping – 6; and enjoyment of life – 5. See id.

In finding that plaintiff's anxiety did not constitute a significant limiting mental impairment, the ALJ provided as follows:

> The record also refers fleetingly to complaints of anxiety, and mental health treatment is documented in July and August 2007 (Exhibits 3F/4 and 7F/28). However, the claimant is not found to have had any significant limiting impairment. At a minimum, the record does not document a significant history of psychiatric treatment, nor does it show any psychiatric hospitalizations. Treatment records do not indicate any particular abnormal behavior.

> And the claimant's activities of daily living seem to have been limited by physical factors rather than any mental impairment.

AR 14.

On review, the court concludes that there exists substantial evidence in the record in support of the ALJ's finding that plaintiff's mental impairment was not severe. While the record does evidence plaintiff complaints of anxiety and insomnia, he was also noted to be a "well-functioning" man who regularly denied depression and whose anxiety was relieved "significantly" by medication. See AR 456 ("pt reports that he is sleeping VERY WELL. He is having normal-not-bad dreams. . . . He has significantly less anxiety.") (emphasis in original). See also AR 499, 509 (plaintiff's anxiety was deemed "not severe" in a November 13, 2007 residual functional capacity assessment); AR 592 (progress note following June 17, 2009 consultation, in which plaintiff stated that he was not taking medication for his anxiety). Furthermore, while Dr. Ahmad did note that plaintiff's impairments affected his daily living activities, there is nothing in the record to suggest that Dr. Ahmad's conclusions were based entirely or even substantially on plaintiff's anxiety as opposed to a collective view of his impairments or, as the ALJ determined, that the disability-related issues stemmed primarily from physical factors as opposed to mental health factors. Accordingly, the undersigned finds no error on this ground.

B.       The Opinion of Dr. Daniel Fields

Plaintiff also argues that the ALJ erred by failing to give any reason for disregarding the opinion of Dr. Daniel Fields, plaintiff's treating physician whom plaintiff saw several times in early 2007 following a February 15, 2007 workplace accident that resulted in injury to plaintiff's neck and back. AR 226-45. In a report dated April 25, 2007, two months after the accident, Dr. Fields opined that plaintiff should not do any overhead work or do any activity that would put his neck at risk of whiplash-type injuries. Id. at 227-28. Dr. Fields qualified this assessment by noting that plaintiff's symptoms were "benign" and that most people will get better on their own over a six-month period. Id. at 228. Dr. Fields did not see plaintiff again after issuing this report.

Dr. Fields's assessment that plaintiff refrain from overhead work was contradicted by a State Agency non-examining physician, who determined on November 13, 2007 that plaintiff had the ability to do frequent overhead reaching. AR 496. Plaintiff argues that because Dr. Fields's opinions as a treating physician were contradicted by a non-examining physician, the ALJ was required to give "specific and legitimate" reasons for rejecting Dr. Fields' opinion. The ALJ, however, did not address the opinions of Dr. Fields at all.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1295 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). But "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

It is undisputed here that the ALJ failed to address Dr. Fields's assessment of plaintiff's functional limitations when determining plaintiff's RFC. The undersigned concludes that, assuming the ALJ's failure to discuss this assessment was error, it was harmless error because that failure was inconsequential to the ultimate non-disability determination. See, e.g., Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (stating that an ALJ's error is harmless if it

1  is "inconsequential to the ultimate nondisability determination") (citation omitted).  This is
2  because in his report, Dr. Fields concluded that plaintiff's limitations would be resolved on their
3  own in six months' time, AR 228, and an impairment or combination of impairments is not severe
4  at step two of the analysis unless it lasted or is expected to last for a continuous period of at least
5  12 months.  See 20 C.F.R. § 416.920(a)(4)(ii) ("If you do not have a severe medically
6  determinable physical or mental impairment *that meets the duration requirement in § 416.909*, or
7  a combination of impairments that is severe *and meets the duration requirement*, we will find that
8  you are not disabled.") (emphasis added); 20 C.F.R. § 416.909 ("Unless your impairment is
9  expected to result in death, *it must have lasted or must be expected to last for a continuous period*
10 *of at least 12 months*.  We call this the duration requirement.") (emphasis added); see also
11 Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984) (affirming the
12 ALJ's decision that the appellant had not suffered from a severe physical impairment because the
13 record did not demonstrate that the appellant suffered from a physical impairment lasting the
14 required 12-month period).

15         Here, regardless of the contradictory findings related to plaintiff's functional limitations, it
16 is evident that Dr. Fields's assessment was based on his belief that plaintiff's limitations would
17 not last beyond six months.  In finding that Dr. Fields's assessment fails to meet the duration
18 requirement, the court further finds that any error by the ALJ in not specifically addressing the
19 contradictory findings in Dr. Fields's report was harmless because Dr. Fields's assessment was
20 ultimately not inconsistent with the ALJ's RFC determination.  See Hanson v. Astrue, 2009 WL
21 2984051, at *6 (C.D. Cal. 2009) (finding that the ALJ was not required to discuss the assessment
22 of a doctor that was based on an opinion that the plaintiff's impairment would not last longer than
23 four months).

24 C.      The Opinion of Dr. Allen Hassan

25         Plaintiff next contends that the ALJ erred by failing to give a specific and legitimate
26 reason for rejecting the May 13, 2004 opinion of Dr. Allen Hassan, a second treating physician.
27 Mot. Summ. J. 26, ECF No. 16-1; AR 303.  From the May 13, 2004 progress report produced in
28 the context of a worker's compensation claim, Dr. Hassan opined that plaintiff "is limited to

sedentary work, approximately half the time in a sitting posture and approximately half the time standing or walking position, with a minimum of demands for physical effort." AR 303.

The ALJ's functional assessment of plaintiff was that he is able to lift 10 pounds frequently and 20 pounds occasionally; able to stand and/or walk six hours in an eight-hour workday; able to sit six hours in an eight-hour workday; unlimited in pushing and pulling; able to stoop and crouch occasionally; able to climb ladders, ropes, and scaffolds occasionally; otherwise, able to perform frequent climbing, kneeling, balancing, and crawling; and with the left upper extremity, able to perform no more than frequent overhead reaching and/or feeling activities. In so determining, the ALJ relied on a March 1, 2005 progress note written by Dr. Hassan stating that plaintiff "is permanently precluded from any bending, stooping, twisting activity or lifting over 25 pounds on any repetitive basis." AR 293. The ALJ also relied on the opinions of two state agency non-examining physicians, one dated November 13, 2007 and the other dated June 11, 2008, that plaintiff is able to lift 10 pounds frequently and 20 pounds occasionally; able to stand and/or walk occasionally; able to stand and/or walk six hours in an eight-hour workday; able to sit six hours in an eight-hour workday; occasionally able to climb ladders, ropes, and scaffolds; able to perform only occasional stooping and crouching; and with the left upper extremity, able to perform frequent overhead reaching and frequent feeling. See AR 15-16, 495, 547-48.

Plaintiff argues that the ALJ erred by not giving specific and legitimate reasons for rejecting Dr. Hassan's opinion as set forth in the May 13, 2004 progress note, which plaintiff contends contradicts the November 13, 2007 opinion of the State Agency non-examining physician relied on by the ALJ that plaintiff can stand and/or walk six hours in an eight hour work day and sit for six hours in an eight hour work day. AR 15, 495.

Initially, "findings made in a workers' compensation case are not conclusive in a Social Security case." Allen v. Astrue, 2011 WL 1584450, at *14 (E.D. Cal. Apr. 26, 2011) (citing Marci v. Chater, 93 F.3d 540, 543-44 (9th Cir. 1996)). In any event, plaintiff is correct that the ALJ did not address Dr. Hassan's May 13, 2004 opinion. But even assuming, as before, that this was in error, the court again finds that the error was harmless because Dr. Hassan's assessment,

1  which provides that time be evenly split between sitting and standing and/or walking, is not

2  inconsistent with the State Agency non-examining physician's assessment specifying six out of

3  eight hours for each activity.

4  D.     Plaintiff's Testimony and the ALJ's Credibility Determination

5      Plaintiff also argues that the ALJ failed to give legally adequate reasons to discredit his

6  testimony regarding substantive complaints and limitations. Mot. Summ. J. 28, ECF No. 16-1.

7  Plaintiff testified that: the side effects of medication kept him from being an alert and safe worker

8  and required him to lie down a couple times a day for about twenty minutes (AR 35-38, 47-48);

9  the pain in his and mid/low back and neck, which occasionally went down to his arms, precluded

10  him from work (AR 37); back pain allowed him to sit for up to thirty minutes at a time, but for no

11  more than ninety minutes total over the course of an eight hour work day (AR 42, 46); he could

12  stand for thirty minute intervals for a total of four hours over an eight hour work day (AR 46-47);

13  he could lift and carry about fifteen pounds (AR 44, 50); he had difficulty using his arms and

14  hands because they would occasionally jerk and cause him to drop things (AR 49); and he had

15  anxiety (Mot. Summ. J. 30, ECF No. 16-1).

16      In evaluating whether subjective complaints are credible, the ALJ should first consider

17  objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341,

18  344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ then

19  may consider the nature of the symptoms alleged, including aggravating factors, medication,

20  treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the

21  applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

22  testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

23  prescribed course of treatment, and (3) the applicant's daily activities. Smolen, 80 F.3d at 1284.

24  Work records, physician and third party testimony about nature, severity and effect of symptoms,

25  and inconsistencies between testimony and conduct also may be relevant. Light v. Soc. Sec.

26  Admin., 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly

27  debilitating medical problem may be a valid consideration by the ALJ in determining whether the

28  alleged associated pain is not a significant nonexertional impairment. See Flaten v. Sec'y of

HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Id.

    1.    Mental impairment

The ALJ discredited plaintiff's testimony regarding his mental impairment on the grounds that (1) the record does not document a significant history of psychiatric treatment; (2) the record does not show any psychiatric hospitalizations; (3) treatment records do not indicate any particularly abnormal behavior; (4) and claimant's activities of daily living seem to have been limited by physical factors rather than any mental impairment. AR 14. As discussed infra, the ALJ properly assessed plaintiff's mental health treatment and medical records. In particular, the ALJ noted that plaintiff's mental limitations had no bearing on any of the disability-related issues to which plaintiff testified. AR 14. The ALJ provided clear and convincing reasons in finding that plaintiff's mental health testimony was not credible.

    2.    Physical impairment

Regarding plaintiff's physical impairments, the ALJ noted that plaintiff required narcotic-based pain medication and the consistency of plaintiff's treatment supported his credibility to a degree. AR 15. Nonetheless, the ALJ discredited the severity of plaintiff's complaints as follows:

> [I]n an assessment dated March 2005, Dr. A. Hassan, the claimant's treating physician, opines that the claimant is unable to perform bending, stooping, and twisting, and unable to lift more than 25 pounds repetitively (Exhibit 6F/24). Such an opinion seems consistent with a [RFC] for a significant range of light level exertion. Similarly, in assessments dated November 2007 and June 2008, two State Agency physicians describe the claimant's [RFC] as follows: . . . (Exhibits 8F and 14F). These opinions seem essentially well-supported by the record and are thus adopted to the extent above.

AR 15-16.

While the undersigned finds that the ALJ provided clear and convincing reasons for rejecting portions of plaintiff's testimony, the ALJ did not provide sufficiently specific reasons to discredit all of plaintiff's testimony. See Lester, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). The ALJ properly points to the primary care physician and to the non-examining physicians' medical opinions, which endorse plaintiff's ability to do light work, to refute most of plaintiff's testimony. However, the ALJ does not specifically address plaintiff's testimony regarding medication side effects. See Erikson v. Shalala, 9 F.3d 813, 817-18 (9th Cir. 1993) (where the ALJ must consider *all factors* that might have a significant impact on an individual's ability to work. These factors may include side effects of medications as well as subjective evidence of pain (internal quotation omitted)). For example, the ALJ cites Dr. Hassan's March 1, 2005 progress note as support of the RFC assessment allowing light work. AR 293. However, the progress note also states that plaintiff is taking Vicodin, diazepam, and Soma for pain management. Furthermore, other medical notes provide support for plaintiff's testimony showing an increase in levels of drowsiness from pain medication. AR 586 ("Does not take any [medications] before he drives (his own decision to avoid blame in an accident – I encouraged him to follow this rule given the combination of meds he is taking")); 618-21 (plaintiff indicated no drowsiness on 15mg dose of morphine on December 12, 2008, but was warned of drowsiness when dose increased to 30 mg on August 12, 2009: "Morphine increased to 30 mg po Q8, watch for drowsiness and dizziness. No driving car or machine if drowsiness or dizziness."). The ALJ erred by not identifying specific evidence that makes plaintiff's medication-related testimony not credible.[2] On these grounds the court finds that this case warrants remand.

---

[2] The Commissioner attempts to equate the side effects of plaintiff's pain medication with plaintiff's complaints of anxiety and stress so as to encourage the court to find that the ALJ's rejection of plaintiff's mental impairments serves to similarly serve as a valid rejection of any side effects of plaintiffs' pain medication. See Def.'s Mot. Summ. J. at 11. The court finds this argument unconvincing.

### D. Plaintiff's remaining arguments

Plaintiff's final two arguments focus on the ALJ's consideration of plaintiff's impairments when posing hypothetical questions to the VE and the ALJ's subsequent RFC assessment based in part on the VE's testimony. Because the issue of the side effects from plaintiff's pain medication is not settled, and because that issue is central to the remaining two arguments, the court declines to proceed further with its analysis at this time.

## CONCLUSION

Accordingly, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. This action is remanded for further proceedings consistent with this opinion.

DATED: August 12, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;stam0192.ss